E-FILED
Friday, 03 December, 2010 04:12:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Richard Smego,

    Plaintiff,

08-3142

Carol Adams et al.,

    Defendants.

## Order

    Before the court are the parties' respective motions for summary judgment. For the reasons below, the motions by Defendants Adams, Bednarz, Vance, Anyanwu, Lawshea and Lochard will be granted in full. The motion by Dr. Mitchell will be granted as to all claims other than the plaintiff's claim regarding his current dental needs. Dr. Mitchell will be directed to file a supplemental summary judgment motion on that issue.

### *Summary Judgment Standard*

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

### *Facts*

    The plaintiff is detained by the State pursuant to the Illinois Sexually Violent Persons

1

Act. In December, 2005, the plaintiff went through the intake procedures at the Joliet Treatment and Detention Center. (Plaintiff's Dep. p. 7). Defendant Dr. Mitchell, a dentist, saw him during intake and wrote down a treatment plan for his teeth. Specifically, the plaintiff maintains that he told Dr. Mitchell at this time that his tooth #2 was painful. (Complaint, para. 7). According to the plaintiff, Dr. Mitchell responded that his tooth #2 was repairable, but that she did not have the materials to repair it on that date. (Complaint para. 11; Plaintiff's Dep. p. 107). Dr. Mitchell allegedly told the plaintiff that she would call him back for treatment in January or February of 2006 to fix tooth #2. (Complaint, para. 13). The records, however, state "next visit fill #31 - Buccal. Scaled Lower right 2/22/05." (d/e 117-4, p. 3). According to the dental records, Dr. Mitchell also planned to provide future treatment for teeth #'s 2, 6, 7, 8, 9, 10, 18, 20, 21 and 31. (d/e 132, p. 1). The date those services were actually rendered, if any, and what service was actually rendered is noted next to the tooth #, and other teeth numbers have since been added. (d/e 117-5, pp. 2, 5). Thus, the "services planned" part of the records changes as the services planned or rendered changes.

The plaintiff was not called back to the dentist in January or February 2006. Around June, 2006, the plaintiff was transferred to the Rushville Treatment and Detention Center as part of the transfer of all the residents from Joliet to Rushville. (Plaintiff's Dep. p. 9). By then, the plaintiff still had not had any work done on his teeth, and he avers that he had a painful hole in tooth #2. (Plaintiff's Dep. p. 9). Though medical issues had been grievable at Joliet, the policy was changed in or around June, 2006, so that grievances could no longer be filed on medical/dental issues once the plaintiff arrived at Rushville. *Id.* The plaintiff could, however, fill out a health care request form or ask a nurse during med-line for help with his dental problems. (Plaintiff's Dep. p. 73). Medical/dental issues became grievable in the Fall of 2008. (Plaintiff's Dep. p. 87).

Dr. Mitchell began providing dental services to Rushville residents through an independent contractor—Wexford Health Services— in August, 2006. Dr. Mitchell is the only dentist at Rushville, which currently has about 390 residents. The plaintiff believes that the number of residents was more like 250 in 2006-07. Dr. Mitchell currently spends 15 hours per week at Rushville, apparently on the weekends, so the patients must be appropriately triaged to ensure that the most serious needs are met first. (Mitchell Aff. ¶¶ 3-4).

On or around June 24, 2007, about one year after the plaintiff had been transferred to Rushville and 18 months after the December 2005 visit, Dr. Mitchell saw the plaintiff again. This appointment occurred about two weeks after the plaintiff had made reports of tooth pain and lack of treatment to his primary therapist. (d/e 132-1, p. 1). Dr. Mitchell took x-rays, and, according to the plaintiff, told him that she still had no permanent filling material. (Plaintiff's Dep. P. 111; Complaint ¶ 25). Dr. Mitchell allegedly told the plaintiff that she had been ordering supplies for six months but had not received any. (Complaint ¶ 27). The records for that day state "(next visit fill #2 and #31) 7/1/07." By this time, the plaintiff maintains that parts of tooth #2 had broken off and the hole in tooth #2 had gotten larger. (d/e 132, p.1).

According to the plaintiff, he went back to Dr. Mitchell on July 1, 2007, and was told by

Defendant Lawshea that the supplies still had not come in. (Complaint ¶ 31). Lawshea allegedly told the plaintiff that she believed that DHS staff were failing to follow up or trying to stall the orders, and she allegedly advised the plaintiff to file a grievance (which apparently was not an option at that time). (Complaint, ¶ 31). The plaintiff testified in his deposition that Dr. Mitchell and Lawshea both told him that the supply request was being forwarded to Defendant Vance. (Plaintiff's Dep. p. 136.) Dr. Mitchell concedes that "[a]ll of the dental equipment at Rushville underwent major repair or replacement during the first two years that Rushville was in operation." (d/e 132-1, p.2). She would ask the "site administrator, health care unit administrator and/or director of nurses to look into having the repairs conducted, but she did not have the authority to hire people to maintain the equipment." (d/e 132-1, p. 26). Dr. Mitchell would ask Lawshea to request supplies from the medical vendor.[1] (d/e 132-1, p. 26). According to Lawshea, Lawshea would notify Defendant Vance of a problem with the equipment or the need for supplies. (d/e 132-1, p.2). The contract between Wexford and Dr. Mitchell states that "Provider [Mitchell] agrees that if he/she determines than an Inmate requires care beyond that possible to be provided during an on-site visit, he/she will work with the Site Medical Director to request a referral to a contracted off-site provider for services." (d/e 132-4). Thus, Dr. Mitchell had the power to bring about the referral of a resident to an outside dentist.

Defendant Vance was Rushville's health care director from July 2001 to August 31, 2007. She was not responsible for approving dental supplies, but she was responsible for receiving dental supply orders and "submitting them." (d/e 99-6, p. 4, ¶ 5). She does not say to whom she submitted these orders or what her responsibilities were regarding following up on the orders to ensure that the needed supplies were received. There is no affidavit from Vance in the record. In the absence of evidence otherwise, the court draws that inference that Vance was responsible for obtaining the necessary dental equipment and supplies for Rushville, as relayed to her by Dr. Mitchell or Defendant Lawshea.[2] *See also discussion below.*

On July, 23, 2007, Dr. Mitchell saw the plaintiff. She put a temporary filling in tooth #31

---

[1] The identity of the medical vendor is not clear. Dr. Mitchell worked for Wexford Health Sources, Inc., but Defendant Vance, who was apparently in charge of ordering supplies, worked for Addus Healthcare, Inc.

[2] As discussed in footnote 1, there appears to be two different independent contractors. Vance avers that she worked for Addus, while Dr. Mitchell worked for Wexford. The interplay between the two is not illuminated. The contract between Wexford and DHS states that the vendor (Wexford) is to provide the medical supplies, which includes medical equipment, and that the vendor is responsible for ordering the supplies through the facility. (d/e 132-4, p. 25). The contract also states that "Vendor shall have staff and staff schedules sufficient in number and hours that ensure adequate and timely services to facility residents as required." (d/e 132-4, p. 28). Vance apparently did not work for Wexford, but it appears that she was responsible for fielding supply requests and for obtaining the supplies.

3

and performed some cleaning. However, she did no work on tooth #2 at that time, though the plaintiff maintains that he told her that it was tooth #2 that was bothering him the most.

On August 5, 2007, the plaintiff was eating dinner when a "large piece of the tooth [#2] broke off completely . . . ." (Complaint ¶ 35). On August 25, 2007, Dr. Mitchell saw the plaintiff and tried to put a filling in tooth #2, but the decay was too extensive. The only option was to extract tooth #2, which Dr. Mitchell did with the plaintiff's reluctant consent (because he essentially had no choice). Dr. Mitchell then prescribed Motrin for 7 days, but the plaintiff's intake sheet indicates that he is allergic to Motrin.

In November 2007, the plaintiff's primary therapist e-mailed Dr. Mitchell regarding the plaintiff's concerns over his dental needs. (Plaintiff's Dep. 121). Dr. Mitchell responded to the inquiry, but the court does not see the response in the record. (d/e 132, p.7).

About five months later, on April 30, 2008, the plaintiff submitted a health care request form reporting that the temporary filling in tooth #31 had fallen out and that he had never been called back for a permanent filling. (d/e 117-6, p.4). On May 4, 2008, Dr. Mitchell put another temporary filling in tooth #31 and again prescribed Motrin, though the plaintiff says that he told Dr. Mitchell of his allergy to Motrin. The plaintiff asserts that Dr. Mitchell told him that tooth #31 was now too far gone and would have to be pulled, but the plaintiff refused and persuaded Dr. Mitchell to try to save the tooth.

Dr. Mitchell saw the plaintiff on May 25, 2008, but was unable to provide treatment because the compressor was not working.

The next month, on June 22, 2008, Dr. Mitchell placed permanent fillings in teeth #'s 29, 30 and 31. The plaintiff filed the Complaint in this case on June 26, 2008.

On August 12, 2008, the plaintiff submitted a health care request, asking for "a pain killer to handle the pain of a tooth that is now literally falling apart. The Dentist has already told me she could not see me again until Sept. some time. I cannot take Motrin as I indicated in the past . . . ." (d/e 117-6, p. 8).

On September 7, 2008, Dr. Mitchell saw the plaintiff in response to a healthcare request form filed by the plaintiff. Dr. Mitchell diagnosed a cavity in the plaintiff's tooth # 7. However, the tooth was not filled that day because the plaintiff was ill. A few weeks later, on September 22, 2008, Dr. Mitchell treated teeth #'s 6, 7, and 8. The transcription for 9/22/08 states "[Next visit finish. 9/28/08]"; the original record appears to state "(No finish 9/28/08)." (d/e 117-4, pp. 4, 6).The plaintiff asserts that Dr. Mitchell told him that she had to stop the work because she needed to catch a train, but that she would come back the next week to finish. (Plaintiff's Dep. P. 26).

According to the plaintiff, Dr. Mitchell never did finish the job on his front teeth (#'s 6,7, and 8). *Id.* The plaintiff asserts that he still has painful sections of his mouth that need

4

treatment, hypersensitive sections, numbness, teeth with jagged edges, and the unfinished September work. (Plaintiff's Dep. P. 27). He testified in his deposition that he tries not to use his front teeth, for fear that the temporary work that was done will fall off. *Id.* at 28. However, later in his deposition, he testified that his only current problem is a chip in his upper, right back tooth, and the fact that the work on teeth #'s 6,7, and 8 has not been completed.

## Analysis

The plaintiff's claim arises under the due process clause of the Fourteenth Amendment since he is a civil detainee, not a convicted prisoner. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)(status of person awaiting trial for civil commitment under Sexually Violent Persons Act was comparable to pretrial detainee). The Seventh Circuit has stated that the Fourteenth Amendment protections are "'at least as great as the protections available to a convicted prisoner under the Eight Amendment.'" *Tesch v. County of Green Lake*, 157 F.3d 465, 473-73 (7th Cir. 1998), *quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, the Seventh Circuit has also stated that "'there is little practical difference between the two standards. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001), *citing Weiss v. Cooley*, 230 F.2d 1027 (7th Cir. 2000); *Grieveson v. Anderson,* 538 F.3d 763, 771 (7th Cir. 2008)("Either way, the inquiry under both provisions of the Constitution is essentially the same."). Accordingly, to survive summary judgment, the plaintiff must have enough evidence to allow a rational juror to conclude that the defendants were deliberate indifferent to his serious dental needs. *See Grieveson*, 538 F.3d at 779.

Dental needs can be serious, and the defendants do not seem to argue that the plaintiff's dental needs were not serious. Treatment had already been planned by Dr. Mitchell, and the plaintiff's own description of his pain and problems with his teeth allow an inference that his needs were serious. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

The issue in this case is whether any of the defendants were deliberately indifferent to those serious needs.

> Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir.2010), *citing Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir.2006). Deliberate indifference is intentional or reckless conduct, not mere negligence. *Gayton*, 593 F.3d at 620.

*Berry*, 604 F.3d at 440.

### *Defendants Adams and Bednarz*

Defendant Carol Adams is the former Secretary of the Department of Human Services.

5

She cannot be liable for the constitutional violations of others solely because she was in charge. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)("The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."). The plaintiff contends that Adams was responsible for budget restrictions which allegedly prevented Dr. Mitchell from obtaining the necessary supplies and equipment. There is no evidence of that on this record, though. There is no evidence that Defendant Adams was personally aware of any systemic problems with the provision of dental care at Rushville, or was personally aware that the plaintiff's serious dental needs were not being addressed.

Defendant Dr. Bednarz is the Medical Director at Rushville Treatment and Detention Center. The plaintiff maintains that Dr. Bednarz knew about the plaintiff's dental problems from staffing meetings. Dr. Bednarz, for his part, does recall the plaintiff mentioning dental problems, and also recalls that, based on his inquiry to Dr. Mitchell, he felt reassured that the plaintiff was receiving appropriate dental care. He does not recall any specifics of that interaction. The plaintiff does not believe that this encounter ever took place. There is also evidence that the plaintiff's primary therapist, Mark Babula, contacted Dr. Mitchell on the plaintiff's behalf.

The plaintiff asserts that Dr. Bednarz should have intervened once it became obvious that Dr. Mitchell was not going to provide dental care. It is not clear, though, what more Dr. Bednarz could have done except contact Dr. Mitchell to inform Dr. Mitchell of the plaintiff's concerns. It is undisputed that Dr. Mitchell was contacted, at least by the plaintiff's primary therapist, and that the plaintiff received dental care thereafter. Dr. Bednarz is not a dentist, and there is no evidence that Bednarz was responsible for obtaining dental supplies. The record does not show how Dr. Bednarz could have intervened in Dr. Mitchell's scheduling and triage decisions, or in Dr. Mitchell's apparent decision that no referral to an outside dentist was necessary. In short, even if Dr. Bednarz could have tried harder on the plaintiff's behalf, that does not rise to the level of deliberate indifference.

*Defendants Dr. Lochard and Dr. Anyanwu*

Dr. Lochard currently works as a physician at Rushville. He first saw the plaintiff on December 10, 2007. He gave the plaintiff a physical exam, noting that the plaintiff had diabetes and hypertension. Dr. Lochard ordered several lab and other tests. Dr. Lochard continued to see the plaintiff for these problems and other medical problems, but there is nothing in the medical records that the plaintiff complained about his teeth. The plaintiff maintains that he told Dr. Lochard about his dire need for dental services. Even assuming that is true, though, Dr. Lochard was not deliberately indifferent to those complaints. There was already a dentist on site who was responsible for providing dental services, and the plaintiff was already seeing Dr. Mitchell for his dental complaints. Dr. Mitchell was the one with the authority to determine when and whether the plaintiff received dental care, and she was also the one with the authority to refer the plaintiff to an outside dentist. Dr. Lochard did not have this authority nor the expertise to determine what kind of dental treatment the plaintiff needed. Dr. Lochard's purported refusal to step outside his boundaries on to someone else's turf is not deliberate indifference.

6

Similarly, Defendant Dr. Anyanwu is not a dentist. Dr. Anyanwu was a former medical doctor at Rushville who saw the plaintiff for his medical complaints. The plaintiff asserts that he repeatedly told Dr. Anyanwu that he had serious dental needs that were not being addressed, and that Dr. Anyanwu responded that dental was not his area. The plaintiff believes that Dr. Anyanwu should have done something to ensure that the plaintiff received dental care. As with Dr. Lochard, though, this was not Dr. Anyanwu's area of expertise nor within his authority.

*Defendant Lawshea*

Lawshea was a dental assistant at Rushville during some of the relevant time. She is not qualified to diagnose dental problems. She forwarded requests for supplies to Vance, but had no authority to actually order the supplies on her own.

The plaintiff asserts that he told Lawshea in February 2007 of his urgent need for dental treatment and continued to inform her thereafter. Lawshea purportedly told the plaintiff repeatedly that she was ordering supplies but no supplies were coming.

The plaintiff faults Lawshea for failing to schedule necessary appointments and for failing to ensure that adequate supplies were obtained. The only failure to schedule in this record came after the plaintiff's December 2005 appointment, but there is no evidence that Lawshea was responsible for that. Even if Lawshea did fail to schedule that follow-up visit, there is no evidence that this failure was deliberate. At most, the failure was negligent.

As for the supplies, Lawshea had no authority to order the supplies. All she could do was forward the supply requests to Vance, which she did. The plaintiff asserts that she should have done something to spur Vance (or whoever) to get the supplies ordered, but this purported failure would not be deliberate indifference. Deliberate indifference cannot attach to someone who had no authority to fix a problem. Lawshea's position was not high enough on the chain of command to infer that kind of authority.

*Defendant Dr. Mitchell*

The record shows that Dr. Mitchell saw the plaintiff in December, 2005, and intended to see him again in January or February 2006 to get started on treatment. That follow-up appointment was never scheduled, for reasons not in the record, and the plaintiff was not seen again for 1 ½ years. By then his tooth #2 could not be saved, even though the plaintiff asserts that Dr. Mitchell told him in 2005 that it could be saved.

Dr. Mitchell avers that "[a]lthough I did not see Mr. Smego in 2006, the missed appointment had no impact on his overall dental health." (d/e 117-3, p. 5). The court cannot conclude that the plaintiff suffered no harm, though. He did lose tooth #2, and he did purportedly suffer pain and difficulty eating during this time.

However, there is no evidence that anyone deliberately failed to schedule the follow-up

7

appointment. Nor is there any indication of a systemic problem with follow-up appointments. At most, this was negligence on the part of the scheduler. Falling through a crack is not the basis for a constitutional violation. Further, it is undisputed that Dr. Mitchell does not do the actual scheduling. She marks it in her notes, and someone else schedules.

If Dr. Mitchell had known that there was no hope of filling the plaintiff's teeth for 1 ½ years because she had no supplies, deliberate indifference might be inferred because she did not refer the plaintiff to an outside dentist. However, no such inference arises from this record.

First, no rational juror could conclude that Dr. Mitchell knew about the missed appointment and the plaintiff's increasing dental problems until June 2007, when he told his clinical therapist about a toothache causing him pain that had not been treated. (d/e 132-1, p. 1). There is no written documentation that the plaintiff filed grievances or health care requests before his transfer from Joliet about the lack of follow-up after the December 2005 appointment. There is also no written documentation that he expressed concern about his teeth to his primary therapist or sent health care requests about his teeth until June of 2007 and later. (d/e 132-1, pp. 1-14; d/e 117-6, pp. 2-8). The plaintiff admitted in his deposition that, "based on the records we have here today" it would be correct that he did not see Mitchell in 2006 or fill out a health care request in 2006 or the first half of 2007. (Plaintiff's dep. 111). Additionally, Dr. Mitchell avers that she

> never received any health care request forms from Mr. Smego in 2006, the first part of 2007, 2008 or 2009 nor was I advised by the staff at Rushville that Mr. Smego had filed a healthcare request form to be seen in 2006, first part of 2007, 2008 or 2009. Every time I received a request for dental treatment from Mr. Smego I responded to the request and saw Mr. Smego.

(d/e 117-3, ¶ 17).

This is critical, because if the plaintiff did not inform Dr. Mitchell about the missed appointment and his increasing problems, then she was not deliberately indifferent. The plaintiff argues that he was not supposed to hound Dr. Mitchell—that she should have ensured that he was called back for the appointment because she had already determined that appointment was necessary. (d/e 130, p.9, para. 4)("The Official policy is there is no need or reason to hound staff for problems that the[y] already know about. The Defendant is basically saying she had the right to ignore my pain and suffering because I did not keep sending her request slips telling her she has not yet addressed the problems she diagnosed."). The inquiry here, though, is not what should have happened but whether what did happen is evidence of deliberate indifference. It is not deliberately indifferent to rely on an assistant to schedule follow-up appointments. It is not deliberately indifferent to expect a patient to speak up if he is not called back for an appointment. All the plaintiff has is the fact that Dr. Mitchell noted in December 2005 that he should be scheduled for a follow up in 1-2 months, and he was not scheduled. That is not enough to create an inference of deliberate indifference.

8

The plaintiff maintains that he sent health care requests that were not returned, but this assertion is too vague to conclude that Dr. Mitchell knew, before the Summer of 2007, about the plaintiff's missed appointment and his increasing dental problems, particularly in light of the contrary evidence. (d/e 99-4, Plaintiff's Dep., pp. 97-100)(d/e 130, p. 9, para. 4).

When the problem was brought to Dr. Mitchell's attention in June 2007, she saw the plaintiff that month and scheduled fillings for teeth #'s 2 and 31 for July 1, 2007. On July 1, 2007, the work could not be done because of the lack of supplies. On July 23, though, the plaintiff received a temporary filling for tooth #31, and an unsuccessful attempt was made to fill tooth #2 on August 25, 2007. On this record, then, Dr. Mitchell took action to treat the worst teeth within two months of the plaintiff's complaint to his therapist. Though it may have been preferable to fill tooth #31 with a permanent filling, no inference of deliberate indifference arises from the placement of a temporary filling. That Dr. Mitchell's attempt to save tooth #2 was unsuccessful does not allow an inference of deliberate indifference.

Another temporary filling was placed in tooth #31 on May 4, 2008, a few days after the plaintiff submitted a health care request reporting that his temporary filling had fallen out. Again, it may have been preferable to put a permanent filling in, but using a temporary filling was not deliberate indifference on this record. The next month the plaintiff received permanent fillings in teeth #'s 29, 30, 31, and there is no record of any problems with these teeth since then. While a broken compressor delayed the permanent fillings for about a month, but there is no evidence that this delay amounted to deliberate indifference.

The plaintiff also asserts that Dr. Mitchell prescribed Motrin for his pain, which he cannot take because he is allergic to it. This claim was not in the plaintiff's complaint and cannot be added at this late date; to allow it at this point would prejudice Dr. Mitchell and require the re-opening of discovery. In any event, there is no indication that Dr. Mitchell deliberately prescribed medicine that she personally knew would produce an allergic reaction. The fact that the allergy was listed in the plaintiff's medical records does not, by itself, give rise to an inference of deliberate indifference. At most, the action was negligence. The plaintiff also asserts that state mandates require that he be seen by a dentist every year. Federal courts are not enforcers of state law, and a violation of state law is not a violation of federal law. *Pasiewicz v. Lake County Forest Preserve District*, 270 F.3d 520, 526 (7th Cir. 2001). Nor does the plaintiff have standing to enforce a contract between Wexford and DHS which requires an exam every two years.

In sum, the court sees no deliberate indifference on this record on the dental care given to the plaintiff.

However, this case is also about the plaintiff's ongoing denial of dental treatment. He seems to seek some sort of injunctive relief. (d/e 78, p. 1). The plaintiff asserts that teeth #'s 6, 7, and 8 were never finished, and Dr. Mitchell's dental notes seem to support that conclusion despite her averment that she finished the job. Additionally, the "services planned" part of the plaintiff's records show services planned for teeth #'s 4, 5, 9, 10, 28, 20, 21, which do not

appear to have been rendered. (d/e 117-4, pp. 2-3, 5). The plaintiff contends in his reply that he did see Dr. Mitchell on October 24, 2010, who scheduled further repairs for March of 2011.

Dr. Mitchell's affidavit does not sufficiently explain her 9/22/08 dental notes regarding teeth #'s 6, 7, and 8, which state "next visit finish" or "no finish." She does also not explain why there has been no treatment rendered for the other teeth in the "services planned" part of the records. Accordingly, Dr. Mitchell will be directed to file a supplemental summary judgment addressing these issues.

*Defendant Vance*

On this record, a reasonable inference arises that Vance repeatedly received requests for dental supplies and equipment from Dr. Mitchell and/or Defendant Lawshea. What she did with those requests is not clear. She asserts that she "invoice[d] the orders," and "submitted" them, but that she was not responsible for "approv[ing]" them. (d/e 99, ¶¶ 40, 41; d/e 99-6, p. 4). She does not say who was responsible for approving the orders and buying the supplies. Nor does she illuminate the process through which one might actually obtain dental supplies. What happened to the orders after they were invoiced? A reasonable inference arises from her position as health care director for six years that she had the responsibility and authority to ensure that the dental office at Rushville was adequately supplied, as ordered by Dr. Mitchell through Lawshea. A deliberate failure to perform that duty might give rise to an inference of deliberate indifference.

However, the court has already concluded that Dr. Mitchell was not deliberately indifferent to the plaintiff's dental needs because the plaintiff did not make Dr. Mitchell aware of the problem in 2006 or the first half of 2007. Thus, there can be no claim against Vance during that time period. The court has also concluded that Dr. Mitchell responded adequately once the plaintiff did make his problems known in June 2007, and that the use of a temporary filling for tooth #31 was not deliberate indifference. Thus, Vance's failure to order supplies from June 2007 to the end of her employment in August 2007 could not be deliberate indifference. And, Vance cannot be liable for the lack of supplies after she quit working at Rushville in August, 2007. Her ability to do something about it ended when her employment ended. Thus, she cannot be liable for the plaintiff's lack of dental care after that time, or for the plaintiff's alleged current lack of treatment.

IT IS THEREFORE ORDERED:

1) The motion for summary judgment by Defendants Adams and Bednarz is granted (d/e 95).

2) The motion for summary judgment by Defendants Lawshea and Dr. Lochard is granted (d/e 119).

3) The motion for summary judgment by Dr. Anyanwu is granted (d/e 101).

4) The motion for summary judgment by Defendant Vance is granted. (d/e 99).

5) The motion for summary judgment by Defendant Mitchell is granted in part (d/e 117). Summary judgment is granted to Dr. Mitchell on all claims except for the plaintiff's claims regarding his current need for dental treatment for his serious dental needs. Dr. Mitchell is directed to file a supplemental summary judgment motion on this issue by January 3, 2011.

Entered this 3rd Day of <u>December</u>, 2010.

                                            **\s\Harold A. Baker**

                                         HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE