E-FILED
Friday, 06 February, 2015  10:30:00 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICHARD SMEGO,    ) | |
|    ) | |
| Plaintiff,    ) | |
|    ) | Case No. 08-cv-3142 |
| v.    ) | |
|    ) | Hon. Sue E. Myerscough |
| DR. JACQUELINE MITCHELL,    ) | |
|    ) | |
| Defendant.    ) | |

**PLAINTIFF RICHARD M. SMEGO'S RESPONSE TO
DEFENDANT'S MOTIONS *IN LIMINE* #1–14**

Plaintiff Richard M. Smego submits the following response to Defendant

Jacqueline Mitchell, D.D.S.'s Motions *in Limine* #1–14 (ECF No. 318).

**1.    Response to Defendant Mitchell's Motion *in Limine* #1 to Bar
Plaintiff's Exhibits #50–69 [48–64][1]**

The Court previously denied, and should again deny, this motion *in*

*limine* to exclude the Department of Human Services' therapy records on Mr.

Smego's medical and physical condition.  (*See* Text Order at 1, July 9, 2014

(denying motion *in limine* #1 (ECF No. 261)); *see also* Hr'g Tr. 18:14-20:3, June

27, 2014 (Court stating, as a basis for denying the motion, "Well, certainly the

fact that he complained is going to come in").)

Contrary to Dr. Mitchell's arguments, the therapy records are authentic

documents from the Department of Human Services and are not barred by the

rule against hearsay.  Fed. R. Evid. 901 (authentication); Fed. R. Evid. 803(3)

(statements of the declarant's then-existing physical condition); Fed. R. Evid.

---

[1] In preparing the final pretrial order, Mr. Smego reduced and renumbered his proposed exhibits. Because Dr. Mitchell cites the previous exhibit numbers, the correct exhibit numbers are shown in brackets throughout this response.

803(4) (statements made for medical diagnosis or treatment).

### A.      **The Therapy Records Are Authentic.**

For two reasons, the therapy records are authenticated: (1) their distinctive characteristics, and (2) testimony that they are what they appear to be.  Fed. R. Evid. 901(b)(1), (b)(4).  "Authentication can be established in a variety of ways, including by testimony of a witness with knowledge that a matter is what it is claimed to be, Rule 901(b)(1), and by distinctive characteristics such as appearance, contents, substance, or internal patterns taken in conjunction with circumstances, Rule 901(b)(4)."  *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (brackets, ellipses, and quotation marks omitted).  Nothing more is necessary.  "Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury." *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).

While any one method of authentication is sufficient, the treatment records in this case have been authenticated in two independent ways.  First, the therapy records show both the Department of Human Services' distinctive logo and the distinctive bates stamp from the Department of Human Services' production in this case. *E.g.*, *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 928 (3d Cir. 1986) (logo); *Nationwide Mut. Ins. Co. v. Gretchen Courtney & Assoc., Ltd.*, No. 12 C 5708, 2013 WL 3790912, at *3 (N.D. Ill. July 19, 2013) (logo and motto); F*lood v. Univ. of Md. Med. Sys. Corp.*, No. CIV.A. GLR-12-2100, 2014 WL 7363237, at *4 (D. Md. Dec. 23, 2014) (letterhead and bates

stamp); *Held v. Northshore Sch. Dist.*, No. C13-1548 MJP, 2014 WL 6451297, at

*4 (W.D. Wash. Nov. 17, 2014) (bates stamp; produced in discovery).

Accordingly, the therapy records are authenticated.  Fed. R. Evid. 901(b)(4).

Second, Mr. Smego's primary care physician at Rushville Treatment &

Detention, Dr. Hughes Lochard, testified that the therapy records are exactly

what they appear to be:

> Q.   Doctor, I think you have in front of you now what has been
>       marked as Exhibit 16?
>
> A.   Yes.
>
> Q.   Could you just take a look through those. Let me know when
>       you have a chance to do that.
>
> A.   Yes.  Okay.  Seems to be an interaction between Mr. Smego
>       and his therapist, and in these he complains about his teeth.
>
> Q.   And these records are all created by therapists at Rushville
>       in the course of their treatment of Mr. Smego, right?
>
> A.   Yes.

(Dr. Hughes Lochard Dep. 103:9-20, attached as Ex. A.)[2]   Therefore, the

therapy records were also authenticated by testimony in this case.  Fed. R.

Evid. 901(b)(1), (b)(4).  Dr. Mitchell's authenticity objections — as this Court

previously ruled — are unavailing.

### B.   The Therapy Records Fall Under Exceptions to the Rule Against Hearsay.

Additionally, the rule against hearsay does not bar Mr. Smego's therapy

records because they are (1) statements of Mr. Smego's then-existing sensory

and physical condition and (2) statements made for medical diagnosis or

---

[2] To the extent Dr. Mitchell maintains her objections and even more foundation
is required, Mr. Smego has listed the custodian of records from Rushville
Treatment & Detention and requested a trial subpoena in the pretrial order.
(*See* Pre-Trial Order at 4 & Pl.'s Witness List at 1, ECF No. 319.)

treatment.   Fed. R. Evid. 803(3) (statements of the declarant's then-existing physical condition);  Fed. R. Evid. 803(4) (statements made for medical diagnosis or treatment).

It is well-established that "[a] statement of the declarant's . . . emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" is admissible.   Fed. R. Evid. 803(3).   Yet Dr. Mitchell fails to address — let alone distinguish — Federal Rule of Evidence 803(3).   Indeed, the therapy records fall squarely within that rule because they reflect statements by Mr. Smego about his sensory and physical condition.  (*E.g.*, Pl.'s Ex. 48 ("He further reported that he still has not been properly treated for his toothache and is still in a lot of pain."); Pl.'s Ex. 49 ("He also stated that he was in a lot of pain due to dental work he recently had completed, and was also upset because the dentist worked on the wrong tooth.").)   If Dr. Mitchell's attorneys doubt Mr. Smego's many statements about his horrific pain, which results from Dr. Mitchell failing to treat his decayed teeth and dental disease for nearly a decade, they will have a full and fair opportunity to cross-examine Mr. Smego about these statements at trial.[3]

---

[3] *See United States v. Norman T.*, 129 F.3d 1099, 1106 (10th Cir. 1997) ("The opportunity to cross-examine the out-of-court declarant helps ensure the fairness and integrity of the proceedings where hearsay testimony has been admitted."); *United States v. Kappell*, 418 F.3d 550, 557 (6th Cir. 2005) (upholding trial court's admission of medical testimony in part because opponent "had the opportunity to cross-examine the [declarants]" about the interviews with the doctor); *Richmond v. City of Brooklyn Ctr.*, No. 03-3195 (MJD/JSM), 2005 WL 6763198, *5 (D. Minn. Apr. 12, 2005) (admitting medical record under Rule 803(4) where "Defendants will have the opportunity to cross-examine Plaintiff with regard to those statements [contained in the medical record].").

Mr. Smego's therapy records are also admissible as statements made for the purpose of medical diagnosis or treatment. Fed. R. Evid. 803(4). Federal Rule of Evidence 803(4) exempts any "statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). The rule is based on the rationale that patients have a strong incentive to tell their own medical professionals the truth about their own medical history and symptoms. *See United States v. Newman*, 965 F.2d 206, 210 (7th Cir. 1992) (explaining that without truthful disclosure, "it will be harder for the professional to diagnose [the patient's] problem and treat it effectively"); *Gong v. Hirsch*, 913 F.2d 1269, 1273-74 (7th Cir. 1990) ("The rationale … is that a patient's self-interest in promoting the cure of his own medical ailments guarantees the reliability of statements the patient makes for purposes of diagnosis or treatment.").

Mr. Smego's statements to his therapists are precisely the type of statement contemplated by Federal Rule of Evidence 803(4). He made the statements in order to get treatment from the Rushville dentist as contemplated under the Department of Human Services' Facility Directives. (*E.g.*, Pl.'s Ex. 51 ("Mr. Smego spoke again about his tooth pain and wanting information from the Dentist."); *see also* Dep't Human Servs., Facility Directive 04.0032, at ¶1(c), attached to Def.'s Mot. as Ex. 76.) Because Mr. Smego's statements were made for medical treatment and were pertinent to his treatment, the therapy records satisfy the first part of Federal Rule of Evidence

803(4).  Fed. R. Evid. 803(4)(A); *see also United States v. Santos*, 589 F.3d 759, 763 (5th Cir. 2009) ("Rule 803(4) does not require that each statement be 'necessary' for medical treatment; it requires that statements be 'reasonably pertinent to diagnosis or treatment.'").

Under the second part of Federal Rule of Evidence 803(4), Mr. Smego's statements also "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause."  Fed. R. Evid. 803(4)(B); *e.g.*, Pl.'s Ex. 48 ("He further reported that he still has not been properly treated for his toothache and is still in a lot of pain.").  Dr. Mitchell does not challenge in her motion whether therapy records, in fact, describe Mr. Smego's medical history, his past or present symptoms or sensations, the inception of his symptoms or sensations, or the general cause. (*See* Def.'s Mot. 1–4.)

Instead, Dr. Mitchell simply misstates the rule and case law.  Dr. Mitchell's motion argues that someone, other than the patient, must make the statement.  (Def.'s Mot. 3 ("[A]ny such self-made statements by the plaintiff constitute inadmissible hearsay."); *accord id.* ("Where, as here, the plaintiff himself is the source of the information, the trustworthiness of the data is completely suspect and any such complaints are properly barred.").)  None of Dr. Mitchell's authority supports that reading, and no such authority exists.  To the contrary, as Dr. Mitchell's own authority recognizes, a patient's self-interest in a proper medical diagnosis and treatment makes the medical statements reliable.  *Gong*, 913 F.2d at 1273 ("The rationale behind Rule 803(4) is that a patient's self-interest in promoting the cure of his own medical

ailments guarantees the reliability of statements the patient makes").[4]

Indeed, the cases that Dr. Mitchell cites in her motion excluded the out-of-court statements, not because of their source, but because of their unreliable nature.   Specifically, unlike this case, those cases involved statements that only related to the cause of an injury and were not the type reasonably pertinent to a physician in providing treatment:

- *Gong v. Hirsch* involved a post-occurrence statement — patient "had a perforated peptic ulcer due to prednisone in May, 1986" — which was the "patient's *conclusion* as to the appropriate medical diagnosis" and "did not "reveal symptoms, objective data, surrounding circumstances or any similar *factual* data that a reasonable physician would consider relevant in the treatment or even diagnosis of a medical condition." 913 F.2d 1269, 1272-73 (7th Cir. 1990) (emphasis original).

- *Cook v. Hoppin* involved a statement — plaintiff was injured "while engaged in a shoving or wrestling match" — which related only to fault and the plaintiff's own physician testified he did not rely on the statement.  783 F.2d 684, 687 (7th Cir. 1986).

- *Carlson v. Bukovic* involved a statement — plaintiff was "grabbed by police officer" — which related only to fault.  No. 07-CV-06, 2009 U.S. Dist. LEXIS 47553 (N.D. Ill. June 4, 2009).

Finally, Dr. Mitchell's motion misstates the record by arguing that "[t]here is no evidence whatsoever that the plaintiff's psychotherapists ever communicated the plaintiff's complaints to Dr. Mitchell" and "there is absolutely no evidence that his psychotherapists ever spoke to, or

---

[4] Indeed, courts have interpreted Federal Rule of Evidence 803(4) to exclude as hearsay statements made by someone other than the patient himself.  *See, e.g.*, *Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1274 (8th Cir. 1990) ("[T]o fall within the exception, the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent"); *Field v. Trigg Cnty. Hosp., Inc.*, 386 F.3d 729, 735 (6th Cir. 2004) ("[C]ourts have interpreted the exception to be limited to statements made by the one actually seeking medical treatment or care").

communicated with, Dr. Mitchell about the plaintiff's alleged dissatisfaction."
(Def.'s Mot. 4–5.)  On November 27, 2007, Dr. Mitchell noted in her own dental
records that she sent a response to Mr. Smego's therapist regarding dental
services.  (Pl.'s Exs. 1, 2.)  Dr. Mitchell also testified she knew, at that time, the
therapist had a concern about Mr. Smego not receiving dental  services.  (Dr.
Jacqueline Mitchell Dep. 213:22-24, attached as Ex. B.)

As the record shows, Mr. Smego properly communicated his medical and
dental problems to health care staff, including his therapist, and Dr. Mitchell
buried her head in the sand.  (*See id.*; *see also* Pl.'s Ex. 58 ("no progress had
been made in this area despite his [Mr. Smego] and the therapist's efforts to get
the resident an appointment").)[5]  Dr. Mitchell's motion should, yet again, be
denied.

**2.    Response to Defendant Mitchell's Motion *in Limine* #2 to Bar
       Plaintiff's Exhibits #70, 71, 95, and 103 [65, 66, 81, 87]**

Dr. Mitchell's Motion *in Limine* #2 seeks to exclude three of Mr. Smego's
exhibits on hearsay grounds - Exhibits 65, 66 and 87.[6]  But none of these
exhibits should be excluded in this case.

Exhibit 65 is a letter from Alex Rafferty to Alfreda Kibby, with a copy to
Mr. Smego, dated May 23, 2011, which notifies Ms. Kibby of Mr. Smego's
dental needs. Exhibit 66 is a letter from Michael Bednarz to Mr. Smego dated

---

[5] Based on Dr. Mitchell's new arguments and claimed ignorance, Mr. Smego
will propose the model "ostrich" jury instruction at the pretrial conference.
*Federal Civil Jury Instructions of the Seventh Circuit* § 7.14 cmts. (2009 rev.).

[6] In light of the fact that Defendant is no longer going to call Kelly Lawshea as a
witness, Mr. Smego withdraws Exhibit 81 (formerly Exhibit 95).

April 25, 2014, which informs Mr. Smego that he has spent significant time looking into his dental complaints and discussing Mr. Smego's dental issues with Dr. Mitchell. And Exhibit 87 is Michael Bednarz's Answers to Plaintiff's Interrogatories dated October 30, 2009, which discuss various dental care issues and the policies and procedures applicable to Rushville.

First, Dr. Mitchell incorrectly objects to Exhibits 65 and 66 on the grounds that (1) neither Mr. Rafferty nor Ms. Kibby nor Mr. Bednarz will be testifying in this matter and (2) the letters are hearsay because they contain out of court statements. But Mr. Smego is not going to use Exhibit 65 or 66 to prove that on the given date either Mr. Rafferty or Mr. Bednarz actually wrote the words in the letters. Instead, Mr. Smego will present Exhibits 65 and 66 to show his state of mind and explain why he believed his dental needs would be addressed and he did not need to submit additional Health Care Requests.

Throughout this case, Dr. Mitchell has repeatedly criticized Mr. Smego for not submitting enough Health Care Requests. Accordingly, Mr. Smego is entitled to explain why he only submitted three Health Care Requests related to his dental care. Out of court statements, such as those in Exhibits 65 and 66, are not hearsay when they are used to show their effect on the listener. *Jewett v. Anders*, 521 F.3d 818, 825 n.5 (7th Cir. 2008) (finding that the district court erred in excluding statement offered to demonstrate the effect of the statement on the listener in a § 1983 action); *Abrams v. Springfield Urban League*, No. 12-302, 2013 WL 4675878, at *n. 2 (C.D. Ill. Aug. 30, 2013) ("[A] statement offered

to demonstrate the effect on the listener in order to explain the listener's actions does not constitute inadmissible hearsay.").

Additionally, Exhibit 66 is excepted from the general ban on hearsay because it is a public record that was drafted by Rushville's Medical Director on behalf of the Illinois Department of Human Services and describes that office's activities.  *See* Fed. R. Evid. 803(A)(i); *see also U.S. v. Clarke*, 628 F. Supp. 2d 15, 19 (D.D.C. 2009) (finding that a certificate of naturalization is admissible hearsay under Rule 803(8)(A) exception); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2005 WL 88973, at *18 (N.D. Ill. Jan. 13, 2005) (finding that a letter written by the SEC confirming request of documents was sufficiently trustworthy to satisfy the Rule 803(8)(A) hearsay exception).  As a public record, Exhibit 66 should be admitted even if the Court determines it is hearsay.

Finally, Exhibit 87, Michael Bednarz's Answers to Plaintiff's Interrogatories, should also not be excluded.  Dr. Bednarz is the Medical Director of Rushville and his interrogatories contain information regarding the options for dental care at Rushville.  Mr. Smego's expert, Dr. Shulman, reasonably relied on those answers to interrogatories to form his opinion in this case regarding the options available to Dr. Mitchell for providing care to Mr. Smego.  Federal Rule of Evidence 703 allows him to do so, even if the underlying facts or data are not admissible, so long as experts in the field would reasonably rely upon them, and the underlying facts or data are reasonably reliable.  *United States v. Gardner*, 211 F.3d 1049, 1053 (7th Cir.

2000).   Additionally, presenting Exhibit 87 as evidence will help the jury evaluate Dr. Shulman's opinion.  *See* Fed. R. Evid. 703.  Accordingly, hearsay does not bar Mr. Smego from presenting Exhibit 109 for that limited purpose.

For all these reasons, the Court should deny Dr. Mitchell's Motion *in Limine* #2, and allow Mr. Smego to present Exhibits 65, 66 and 87 for the reasons set forth above.

### 3.    Response to Defendant Mitchell's Motion *in Limine* #3 to Bar Plaintiff's Exhibits # 75 [Withdrawn] and 76 [97]

To exclude the Department of Human Services' Facility Directives on Dental Screening and Oral Health Care, Dr. Mitchell takes the factually incredible and legally frivolous position that "she is certainly *not* responsible for ensuring that DHS residents receive dental care."  (Def.'s Mot. 6 (emphasis original).)  The record does not, and will not, support this position at trial.

Dr. Mitchell's responsibility — factually, contractually, legally, and ethically — is ensuring proper dental and medical care to Rushville's residents. Contrary to Dr. Mitchell's newest position for trial, her sole function is not merely to keep a chair warm, keep her daughter employed, and get paid year after year for hundreds of hours.  The Court previously denied, and should again deny, this motion *in limine*. (*See* Text Order at 1, July 9, 2014 (denying motion *in limine* #3 (ECF No. 261)).)

#### A.    The Facility Directives Are Authentic.

The Department of Human Services' Facility Directives on Dental Screening and Oral Health Care are authenticated by (1) their distinctive characteristics, and (2) testimony that they are what they appear to be.  Fed. R.

Evid. 901(b)(1), (b)(4).   First, the Facility Directives have the Department of Human Services' distinctive format, and they were produced by Department of Human Services under the Freedom of Information Act.   (*See* Email from DHS FOIA Officer, attached as Ex. C (enclosing the Illinois Department of Human Services Treatment and Detention Facility Directives).)

Second, the Director of Nursing at Rushville Treatment & Detention (who ensures that the Facility Directives are current at all times under Facility Directive 04.0005) testified that the records are what they appear to be:

> Q.   Ma'am, if you could identify for me what we are going to mark as Exhibit A. . . . What's its title?
>
> A.   This is the facility directive.
>
> Q.   And is it signed by any individual?
>
> A.   Not signed.
>
> Q.   Okay.  Does it make a difference in terms of these approval lines here whether it's a current policy, or is there an original that's kept somewhere?
>
> MR. VOGT:  Object to foundation, but whatever you can tell him.
>
> THE WITNESS:  No.  This is the facility directives.  As far as it being signed, it's reviewed once a year.
>
> BY MR. WATSON:
>
> Q.   Is what you have handed me, marked as Exhibit A, a true and accurate copy of the policy from medication administration record last revised May 14, 2008, that's kept here at the treatment and detention facility in Rushville?
>
> A.   Yes.  And we actually just went through last year and reviewed all of those, all of the facility directives, as well.
>
> \* \* \* \*
>
> Q.   I'm going to mark this as exhibit letter B, and could you let me know whether you recognize this directive. (Exhibit B marked.)
>
> THE WITNESS:  Yes, I do.
>
> BY MR. WATSON:
>
> Q.   What do you recognize this directive as?

A.      The dental screening directive.

Q.      Is it approved by any individuals as indicated on page 2?

A.      Yes.

MR. VOGT:  Well, wait a minute.  Is it signed?  I'm sorry.

THE WITNESS:  It is not signed, but it is approved.

MR. VOGT:  Okay.

BY MR. WATSON:

Q.      In other words, you would follow this directive here that's marked as Exhibit B?

A.      Yes.

(Danielle Walker-Lowe Dep. 28:18–29:16, 42:22–43:17, attached as Ex. D.) Dr. Mitchell's authenticity objections are frankly baseless.[7]

### B.    __The Facility Directives Are Reliance Materials.__

Moreover, Plaintiff's expert, Jay Shulman, DMD, MA, MSPH, reasonably relied on the Department of Human Services' Facility Directives in forming his opinions.  Fed. R. Evid. 703.  Federal Rule of Evidence 703 allows him to do so, even if the underlying facts or data are not admissible (which they are as discussed above), so long as experts in the field would reasonably rely upon them, and the underlying facts or data are reasonably reliable. *United States v. Gardner*, 211 F.3d 1049, 1053 (7th Cir. 2000).

Dr. Mitchell does not contend that Dr. Shulman lacks the education, credentials, or experience, nor does she even dispute that his opinions are relevant and reliable under Federal Rule of Evidence 702.  Indeed, as the Ninth Circuit Court of Appeals has determined, Dr. Shulman is extensively familiar

---

[7] To the extent Dr. Mitchell maintains her objections and even more foundation is required, Mr. Smego has listed the custodian of records from Rushville Treatment & Detention and requested a trial subpoena in the pretrial order. (*See* Pre-Trial Order at 4 & Pl.'s Witness List at 1, ECF No. 319.)

with dental policies, procedures, and directives as an expert in correctional dentistry and these materials are reasonably relied upon in forming opinions. *Parsons v. Ryan*, 754 F.3d 657, 670 (9th Cir. 2014) (finding "Dr. Jay D. Shulman, a dentist with extensive experience practicing in and examining military, educational, and correctional dentistry programs," and quoting with approval his review of "policies and procedures in the ADC's Dental Department"). Therefore, the jury should both see and hear about the Department of Human Services' Facility Directives and their application to Dr. Mitchell.

### C.  <u>The Facility Directives Cover the Relevant Time Period.</u>

Finally, Dr. Mitchell argues that "there is no way to establish which provisions, if any, were added, removed, or changed" between versions of the Facility Directives on Dental Screening and Oral Health Care. But the Facility Directives, which were revised on August 1, 2005 and May 14, 2008, are identical except for the names on the approval lines. (*See* Ex. C.)[8]  Dr. Mitchell's argument is baseless and contrary to the record.

The members of the jury are entitled to see this probative evidence, including the Department of Human Services' Facility Directives on Dental Screening and Oral Health Care, throughout the relevant time period. Simply because the Facility Directives are detrimental to Dr. Mitchell's case does not make them inadmissible. *See United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("[A]ll probative evidence is prejudicial to the party against

---

[8] Because the Department of Human Services could not locate the March 1, 2003 version, Mr. Smego withdrew this proposed exhibit.

whom it is offered.").

Indeed, if Dr. Mitchell continues her head-in-the-sand approach, the members of the jury also are entitled to hear the model "ostrich" jury instruction. *Federal Civil Jury Instructions of the Seventh Circuit* § 7.14 cmts. (2009 rev.).  As Judge Posner describes them, ostriches "do not just fail to follow through on their suspicion of bad things. They are not merely *careless* birds. The bury their heads in the sand so that they will not see or hear bad things. They *deliberately* avoid acquiring unpleasant knowledge." *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir.1990) (emphasis original). Given Dr. Mitchell's claim that she is not responsible for dental care at all, the Facility Directives do not apply to her at all, the Wexford policies and procedures do not apply to her at all, and her failure to treat Mr. Smego adequately for almost a decade, the jury could infer that Dr. Mitchell deliberately avoided learning the truth.

**4.    Response to Defendant Mitchell's Motion *in Limine* #4 to Bar Plaintiff's Exhibit #77 [99], 78 [100], and 79 [101]**

As discussed above, and as this Court has previously ruled, Dr. Mitchell's motion *in limine* to bar the Department of Human Services' Facility Directives should be denied.  (*See supra* at 11-15; *see also* Text Order at 1, July 9, 2014 (denying motion *in limine* #3 (ECF No. 261)).)

Contrary to Dr. Mitchell's motion, the Department of Human Services' Facility Directives are authentic records and are relevant evidence for the jury. The notion that "there is no evidence, and no witness, who will testify that [residents' care] is Dr. Mitchell's responsibility" strains credulity for even the

- 15 -

most casual reviewer of this record.   (Def.'s Mot. 7.)   Again, Dr. Mitchell requests to exclude this evidence in an effort to bury her head in the sand, as discussed above.   *See Federal Civil Jury Instructions of the Seventh Circuit* § 7.14 cmts. (2009 rev.).

5.    **Response to Defendant Mitchell's Motion *in Limine* #5 to Bar Plaintiff From Testifying Regarding Any Alleged "Missing" Health Care Request Forms**

The Court previously denied, and should again deny, this motion *in limine* to exclude any alleged missing Health Care Request Forms.   (*See* Text Order at 1, July 9, 2014 (denying motion *in limine* #5 (ECF No. 261)).)

As in July 2014, Defendant's Motion *in Limine* #5 again requests that Mr. Smego be barred from presenting any evidence regarding Health Care Requests he claims are missing or "testifying, suggesting or implying that Dr. Mitchell had any involvement in, or was responsible for, the plaintiff's "missing" Health Care Request forms."   (Def.'s Mot. 8.)   Without reference to any rule of evidence, Defendant claims this testimony should be barred because Dr. Mitchell was not involved in "collecting, gathering or storing the Health Care Request forms" and the entities that are involved in those activities are not parties to the case.   (*Id.*)

As an initial matter, Defendant's failure to cite any authority justifying the exclusion of Mr. Smego's testimony on this point means that the motion should be denied as a matter of course.   Moreover, Defendant has repeatedly argued that Mr. Smego did not complain enough and that the fact that he only sent three Health Care Requests means that Mr. Smego was not suffering pain

as a result of his delayed treatment.   Accordingly, Mr. Smego is entitled to respond to Defendant's arguments, including by testifying that he did try to complain more but apparently some of his complaints were not received or addressed.

**6.     Response to Defendant Mitchell's Motion *in Limine* #6 to Bar Evidence or Testimony Related to Other Rushville Residents**

The Court previously denied, and should again deny, this motion *in limine* to exclude evidence regarding the care Dr. Mitchell did – or did not – provide to other Rushville residents.   (*See* Text Order at 1, July 9, 2014 (denying motion *in limine* #6 (ECF No. 261)).)

As in the previous iteration, in her latest Motion *in Limine* #6 Defendant mistakenly argues that all evidence or testimony related to her treatment of other Rushville residents should be barred because it is inadmissible under unspecified Federal Rules of Evidence, confusing, and irrelevant.   This time around Dr. Mitchell also claims that such evidence should be barred because it is "confidential under HIPAA."   (Def.'s Mot. 8.)   But none of these reasons actually requires exclusion of the limited evidence Mr. Smego seeks to present regarding specific instances when Dr. Mitchell treated other Rushville residents instead of Mr. Smego.

Dr. Mitchell and her expert have repeatedly argued that she could not have filled Mr. Smego's cavities on certain days when he had appointments with her because the dental equipment was broken, Dr. Mitchell did not have the requisite supplies or she did not have time to do fillings on a particular day. (*See e.g.*, Expert Report of Dr. Dovgan, at 7-9, 15-18, attached as Ex. E.)   To

rebut those claims, Mr. Smego will present evidence that on multiple days when Dr. Mitchell saw Mr. Smego but did not fill any of his cavities, she did fill the cavities of other Rushville residents.  The fact that Dr. Mitchell filled the cavities of other Rushville residents on the same day as she refused to treat Mr. Smego undermines Dr. Mitchell's defense that it was not feasible for Dr. Mitchell to fill Mr. Smego's cavities on a given day.  Mr. Smego is not interested in holding a mini trial on all the treatment that Dr. Mitchell has (or has not) provided to all the residents of Rushville – he only seeks to present those isolated instances that directly undercut Dr. Mitchell's excuses.  Accordingly, this evidence is relevant and not at all confusing.

Additionally, Dr. Mitchell's claim that the evidence regarding other residents that Mr. Smego will present is confidential HIPAA information is totally baseless.  Dr. Mitchell herself filed the information Mr. Smego's counsel seeks to use with the court in other cases.  (*See* Affidavit of Jacqueline Mitchell, filed in Case No. 3:11-cv-3151, as ECF No. 46-4; Affidavit of Jacqueline Mitchell, filed in Case No. 3:10-cv-3008, as ECF No.  42-3.)  Dr. Mitchell cannot now claim that the information contained in these affidavits is confidential when she is the one that placed it in the public record.  And even if there was some remote risk of a HIPAA violation for using public information, Mr. Smego could use the affidavits without identifying the referenced residents by name.  The information contained in the affidavits is not relevant to detail the care of other specific residents, but rather to demonstrate, contrary to Dr.

Mitchell's claims, that it was feasible for Dr. Mitchell to fill Mr. Smego's cavities on the specific days that she saw him.

None of the cases cited by Dr. Mitchell suggests that Mr. Smego cannot use this information in the limited fashion outlined above to rebut Dr. Mitchell's assertions. *See Levi v. Wilts*, No. 08-3042, 2009 WL 2905927, at *5-6 (C.D. Ill. Sept. 4, 2009) (denying generalized discovery request for all grievances filed against defendant regardless of whether they were related to plaintiff's claim but ordering defendant to provide information regarding other residents who were transported by defendant on the date of plaintiff's incident); *Robenhorst v. Dematic Corp.,* No. 05 C 3192, 2008 WL 1766525, at *3 (N.D. Ill. April 14, 2008) (holding evidence of health problems of plaintiff's family members was not relevant to plaintiff's claim for emotional distress damages).

For all these reasons, Dr. Mitchell's Motion *in Limine* #6 should be denied yet again.

**7-8.   Response to Defendant Mitchell's Motions *in Limine* #7 and #8 to Bar Evidence or Testimony Related to Defendant Mitchell's Salary with the IDOC and Income from Her Private Dental Practice**

Contrary to Dr. Mitchell's claims in her Motions *in Limine* #7 and 8, the salary she receives from the Illinois Department of Corrections and the income she receives from her private dental practice are relevant and admissible evidence in this case. Mr. Smego has a claim against Defendant for punitive damages and in the Seventh Circuit evidence of a defendant's net worth is relevant to an award of punitive damages. *Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996); *Fieldturf Int'l, Inc., v. Triexe Mgmn't Grp. Inc.*, No. 03 C 3512,

2004 WL 866494, at *2 (N.D. Ill. April 16, 2004) ("[w]hen punitive damages are sought, a party's financial condition is at issue and discovery on that subject is relevant."); *see also Federal Civil Jury Instructions of the Seventh Circuit* § 7.24 (2009 rev.) (listing "Defendant's financial condition" as one of the factors the jury should consider when settling the amount of punitive damages).

Dr. Mitchell's claim that her non-Rushville salary and income are private matters and irrelevant to her work at Rushville does not mean that Mr. Smego cannot present evidence of Dr. Mitchell's financial condition to support an award of punitive damages.   Accordingly, Dr. Mitchell's motion should be denied and Mr. Smego should be allowed to present evidence regarding all of Dr. Mitchell's earnings.

**9.    Response to Defendant Mitchell's Motion *in Limine* #9 to Bar Evidence or Testimony Related to Providing Dental Supplies for Residents**

Dr. Mitchell's Motion *in Limine* #9 argues that "plaintiff should be barred from stating, suggesting or inferring that Dr. Mitchell is somehow obligated to provide Rushville's 552 residents with personal dental hygiene matters."  (Def.'s Mot. 10.)   Although it is unclear what Dr. Mitchell means by "matters," Dr. Mitchell is unquestionably liable "when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."   *Youngberg v. Romeo*, 457 U.S. 307, 332 (1982).   Dr. Mitchell also is liable when, as a medical and dental professional, she "strongly suspected that things were not as they seemed, yet shut h[er]

eyes for fear of what [s]he would learn." *Federal Civil Jury Instructions of the Seventh Circuit* § 7.14 cmts. (2009 rev.) (citations omitted).

As the previous Healthcare Director, Carol Vance, and the current Director of Nursing, Danielle Walker-Lowe, have testified, Dr. Mitchell was responsible for placing orders for the dental supplies. (Carol Vance Dep. 21:4–7, attached as Ex. F ("Q. Was it Dr. Mitchell and the dental department's responsibility to make sure that they had the right supplies for them to do their work? A. Yes."); Danielle Walker-Lowe Dep. 14:3–8, Ex. D ("Q. Would you agree that the responsibility of Dr. Mitchell is to supply the dental facility with sufficient supplies and equipment? MR. VOGT: Objection. Foundation. Go ahead, ma'am. THE WITNESS:  Yes.").)  Indeed, Carol Vance remembered questioning, but still following, Dr. Mitchell's orders for dental supplies:

> Q. So, if Dr. Mitchell said something, it would be followed?
> A. Yes.  Like she ordered Sensodyne for people, and I would question her, say, "Do we need this Sensodyne for these people, Dr. Mitchell?" She said "Yes."  She got the Sensodyne.
> Q. And you would follow that?
> A. Absolutely.

(Carol Vance Dep. 50:3–10, Ex. F.)

For these reasons, Dr. Mitchell's motion *in limine* #9 should denied.

## 10. Response to Defendant Mitchell's Motion *in Limine* #10 to Bar Evidence or Testimony Related to Contract Language

Defendant's Motion *in Limine* No. 10 claims that Carol Vance should be barred from testifying regarding (1) Dr. Mitchell's contractual obligations to Addus Health Sources from 2005 to 2007 and (2) Dr. Mitchell's obligations at

Rushville from 2005 to 2007.  As to the first category, Mr. Smego will not be asking Ms. Vance to provide a legal interpretation of Dr. Mitchell's contract with Addus.  As to the second category, the former Healthcare Director at Rushville from 2005 to 2007, Ms. Vance, does have personal knowledge of Dr. Mitchell's roles and responsibilities with respect dental care during that time frame at Rushville.  (*See* Carol Vance Dep. 13:23-14:1, 21:4-7, 28:19-29:5, 36:19-37:4, attached as Ex. F.)  Accordingly, Ms. Vance can appropriately testify regarding Dr. Mitchell's responsibilities at Rushville from 2005 to 2007 and Defendant's Motion *in Limine* #10 should be denied.

## 11.  Response to Defendant Mitchell's Motion *in Limine* #11 to Bar Certain Testimony by Danielle Walker-Lowe

Dr. Mitchell moves to exclude the testimony of Danielle Walker-Lowe, a witness that she disclosed in this case, because "Ms. Walker-Lowe has no personal knowledge of how dental services are provided to residents at Rushville." (Def.'s Mot. 12.) [9]  Dr. Mitchell is simply wrong.  As the Director of Nursing at Rushville and a fellow Wexford employee of Dr. Mitchell, Ms. Walker-Lowe has personal knowledge of how dental services are provided — and have not been provided — to the residents at Rushville.  (Danielle Walker-Lowe Dep. 12:12–19:6, attached as Ex. D.)  Indeed, Ms. Walker-Lowe supervises the entire healthcare staff, including Dr. Mitchell, at Rushville.  (*Id.*

---

[9] In her Rule 26(a)(1) disclosures, Dr. Mitchell disclosed Ms. Walker-Lowe in this case.  (Def.'s R. 26(a)(1) Discl. 2, attached as Ex. G ("Danielle Walker-Lowe . . . may have knowledge regarding the allegations in Mr. Smego's Complaint, including his health and physical condition before and during his civil commitment at Rushville, staffing at Rushville, his asserted damages, the policies, practices, and procedures of Addus, IDOC, DHS, and Wexford.").

at 12:12–13:8.)

Ms. Walker-Lowe, under the Department of Human Services' Facility Directives, is also "responsible for the delivery and quality of health care services, assuring accessibility of all health care services to the residents of the Facility and the management of health care personnel." (Pl.'s Ex. 101 at Facility Directive 04.0002.) For example, Ms. Walker-Lowe testified that she has personal knowledge on many issues regarding Dr. Mitchell and the dental services at Rushville:

> Q. Could you explain, as best you can, how you supervise the dentist or how you do not supervise the dentist?
>
> A. If there is something that needs to be discussed with her, then I will discuss it with her. For the most part, I try to let my regional manager supervise her. If there is an issue at the facility, then I will discuss it with her, as well; but, like I said, for the most part I try to let the regional manager take care of it.
>
> * * * *
>
> Q. Have you ever seen a request for any supplies or equipment from the dentist to you?
>
> A. Yes.
>
> * * * *
>
> Q. Have you ever seen Dr. Mitchell submit a request for outside treatment?
>
> MR. VOGT: Objection. Foundation. Go ahead.
>
> THE WITNESS: I have seen her write orders for them, yes.

(*Id.* at 12:23-13:8, 14:10-12, 16:23-17:4, attached as Ex. D.) Ms. Walker-Lowe is capable of testifying in a meaningful fashion based on her own personal knowledge.

12.    **Response to Dr. Mitchell's Motion *In Limine* #12 to Bar Any Claim that Dr. Mitchell Was Obligated to Send the Plaintiff Off-Site for Routine Dental Care**

In her Motion *in Limine* #12, Defendant claims, again without citing any legal authority, that Mr. Smego should not be allowed to present evidence that Dr. Mitchell should have sent him off-site for dental care because*, according to Dr. Mitchell*, "the plaintiff never suffered from any dental problem that required an off-site referral."  (Def.'s Mot. 14 (quoting from Dr. Mitchell's Deposition).)

However, Dr. Mitchell has repeatedly claimed that it was not feasible for her to provide any additional treatment of Plaintiff at Rushville.  Therefore, Mr. Smego is allowed to present evidence demonstrating that if that was the case, he should have been sent to an off-site dentist for dental care.

Other medical personnel who worked at Rushville during the relevant time frame have testified that, if it was not feasible to provide medical or dental care to a resident at Rushville, then a medical professional could send the resident outside of Rushville for treatment.  For example, Dr. Hughes Lochard testified as follows:

> Q.    And you had mentioned before that if a patient needed treatment that Rushville for whatever reason couldn't provide on a given day that you can then request that that patient be sent out, right?
>
> A.    Correct.
>
> Q.    And that you as the primary care physician can make that request?
>
> A.    Yes.
>
> Q.    And Dr. Mitchell as the dentist can make that request, right?
>
> A.    Yes.

(Dr. Hughes Lochard Dep., at 75:7-17, attached as Ex. A.)  Additionally, Mr. Smego's expert, Dr. Shulman, will testify at trial that Dr. Mitchell should have sent Mr. Smego offsite for treatment if it was not feasible for her to treat Plaintiff's cavities at Rushville.

Just because Dr. Mitchell disagrees with Dr. Lochard and Dr. Shulman, does not mean that their testimony should be barred.  *See Thompson*, 359 F.3d at 479 ("[A]ll probative evidence is prejudicial to the party against whom it is offered.").

## 13. Response to Dr. Mitchell's Motion *in Limine* #13 to Bar Plaintiff's Exhibit No. 80 [69]

Dr. Mitchell moves to exclude the dental policies and procedures from her own employer, Wexford, based on foundation and relevance.  (Def.'s Mot. 14.)  Neither objection is proper.

As for Dr. Mitchell's claim that the Wexford policies and procedures were "generally prepared for unidentified correctional institutions," "do not apply to Rushville," and did not "cover[] Rushville during the plaintiff's stay," she is mistaken.  (*Id.*)  Wexford produced the dental policies and procedures in response to a specific request: "[a]ny dental policies, procedures, protocols, standards, and/or directives, effective any time between December 1, 2005 and the present, that relate to the Illinois Department of Human Services Treatment and Detention Facility in Rushville, Illinois."  (*See* Pl.'s Subpoena at ¶10, attached as Ex. H; Wexford Resp. at ¶10, attached as Ex. I.)

Additionally, the policies and procedures from Dr. Mitchell's own employer and her consistent violation of those policies and procedures tend to

make the fact that Dr. Mitchell was deliberately indifferent more probable than it would be without the evidence.  Fed. R. Evid. 401; *see also Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013) (citing Rushville policy as relevant evidence that Dr. Mitchell "fail[ed] to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (citation omitted)).

Though Dr. Mitchell does not address Federal Rule of Evidence 703, Plaintiff's expert, Dr. Jay Shulman, also reasonably relied on the Wexford policies and procedures in forming his opinions.  Fed. R. Evid. 703.  As discussed above, Dr. Shulman is extensively familiar with dental policies and procedures as an expert in correctional dentistry and they may be reasonably relied upon in forming his opinions in this case.  *See Parsons*, 754 F.3d at 670 (finding "Dr. Jay D. Shulman, a dentist with extensive experience practicing in and examining military, educational, and correctional dentistry programs," and quoting with approval his review of "policies and procedures").  Accordingly, the members of the jury should both see and hear about the Wexford policies and procedures and their application to Dr. Mitchell.

## 14.  Response to Dr. Mitchell's [*sic*] Motion *in Limine* #14 to Bar Plaintiff's Exhibit 91 [76]

Mr. Smego is withdrawing Exhibit 76 (formerly Exhibit 91) and therefore Dr. Mitchell's Motion *in Limine* #14 should be denied as moot.

For these reasons, Plaintiff Richard M. Smego requests that this Court deny Jacqueline Mitchell, D.D.S.'s Motions *in Limine* #1–14.

Dated:  February 6, 2015                          Respectfully submitted,

                                                  /s/ Ann H. MacDonald
                                                  Matthew C. Crowl
                                                  Ann H. MacDonald
                                                  Brian O. Watson
                                                  Katie Klamann
                                                  SCHIFF HARDIN LLP
                                                  233 South Wacker Drive, Suite 6600
                                                  Chicago, Illinois 60606
                                                  Phone: (312) 258-5500
                                                  Fax: (312) 258-5600

                                                  *Attorneys for Plaintiff Richard Smego*

## **CERTIFICATE OF SERVICE**

The undersigned certifies on February 6, 2015, that all counsel of record have consented to electronic service and these papers were filed with the Clerk of the Court for the United States District Court for the Central District of Illinois using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Ann H. MacDonald